We're going to move to the third case this morning, Egly v. Berryhill. May it please the court. I don't think yours is a case they wanted to hear. That's all right. May it please the court. My name is Jason Rodman. They're still leaving. Oh, is that right? I've got to look behind me. That's all right. You can proceed. Thank you. My name is Jason Rodman, and I represent the appellant, Scott Egly. And I would like to manage to preserve three minutes for a rebuttal. This is an appeal from a Social Security ruling denying benefits. It's a Step 5 case. This is a man who started with a basic 12th-grade education with quote-unquote low-average intellectual functioning. He worked a long time with ongoing extremity pain, numbness problems, and he just kept pushing himself to keep working. And then at one point, things got the better of him. He was trying to work, and he was diagnosed with new-onset atrial fibrillation. And they tried to treat that with medication for a couple months. It didn't work. They ended up proceeding with four major heart surgeries all at once. And then not that long after that, they did an MRI of the brain and found right parietal and left cerebellar hemisphere evidence of an infarct. And then he had repeated ER visits on the records, and many but not all of the ER visits indicated that something along the lines of he should return immediately if he has worsening symptoms. Or if he has any problems, in the meantime, he should return immediately to the hospital, to the ER. And that's not the sort of thing that's ordinarily directed. So the first thing I'm going to emphasize today and show the court is that the administrative law judge decision misweighted the doctor opinions of the record and the balancing of them. And then second, that the ALJ opinion… Which opinions in particular? Because the cardiologist, Dr. Kahn, ultimately opines, does he not, as time passes, in other words, after the valve replacement and a lot of the ER visits, that Mr. Eggly was stable from a cardiac perspective. I think that's correct. So which physician's opinion in particular was too discounted? So the argument is about the physician opinions in general, but specifically the one that I think is really illustrative is the SSA examiner, Dr. Schaumburg. Right, that's June of 2012. Yes, that's correct. But the level of detail that he goes into and the fact that it is not rebutted by other psychological examiners. So are you relying then just on mental impairments as opposed to physical impairments for purposes of this appeal? No, in that this gentleman's impairments work very much together. And so if you look at Dr. Williams, psych doctor, and there's the factors that are listed out. There's extent, nature, length, speciality, supportability. And so with Dr. Williams, that's where the sort of nature, it was very connected to the time of the counseling for the wife. But Dr. Williams, even later on in February 2013 and forward, talked about the fact that he was struggling with anxiety and depression since the heart attack. And talks about him being afraid to die. And so I think for someone in Mr. Egley's position, there was literally for an extended period of time, fear of death. So that may go to the mental impairments. But how do you get around what Judge Scudder identified on the physical impairments? That the cardiologist here cleared him to return to work after the surgery. And then in January of 2015 said he was stable from a cardiac standpoint. I think you're right that the focus of Mr. Egley's appeal here is on the actual mental effects. Even though the physical impairments contribute to those mental effects. So specifically, problems carrying out instructions. And then especially, problems understanding and remembering. And then especially carrying out the instructions. He uses the term especially persistence and pace. And specifically limits him saying that most work pressures in all work settings would bother, would be a problem for him. And then when you start sight checking some of the citations to supposed normality, supposed indications that the subsequent record indicates that he's fine mentally. The citations don't check out. And these are the citations on the ALJ opinion from error 18 to 22. And I want to give you some examples of that. They include citing Dr. Kitter a couple times, who's the primary care doctor, as if Dr. Kitter and his nurse practitioner are a neurologist. So that is another example of how the opinions were not weighed and balanced in a way that gave the record full considerations as the regulations and case law require. Also, Dr. Williams, I already covered, repeatedly identified problems with depression and anxiety and saw that as a potential source of larger impairments. In addition, there were times citing too, this time accurately, the Fort Wayne Neurological Center. And supposedly he wasn't reporting depression, anxiety, memory loss, et cetera. But an example where clearly that just wasn't the case would be… Mr. Rodman, let me focus you on the RFC for a second. Absolutely. So the ALJ concluded that the RFC here is one where Mr. Eggly can perform sedentary work, correct? That's correct. Okay. And you seem to take issue with that if I read your brief correctly. Yes. So what function is it specifically that that RFC does not reflect that you believe it should have? It has to do with the ability to stay on task and to persist at something in the face of even ordinary work pressures. And this is where the… …as Judge St. Eve is getting at. It's not the physical side. Yes, that's exactly correct. And so, yeah, he can show up to a softball game of his daughter's, but that doesn't thereby show that he can persist at even an ordinary simple job. He can show up to appointments with the help, presumably, of his parents who he lives with. And things go downhill when he seems to get back together with his wife who has a host of problems of her own. And at one point, he talks with a psychologist. Oh, he has thoughts of college. But it doesn't match the case law to take those thoughts at face value because it overemphasizes daily activities. Unless your honors have any further questions, I'd like to reserve about two minutes for rebuttal. Thank you, counsel. Ms. Cohn? May it please the court, my name is Emily Cohn on behalf of the Acting Commissioner in this case. Your honors should affirm the ALJ's decision in this case that Mr. Egley was not disabled. Your honors, this is not a case about the existence of Mr. Egley's impairments or whether his work was limited by those impairments. The ALJ acknowledged the heart surgery Mr. Egley had, the knowledge Dr. Schomburg's opinion and the examinations, as well as the state agency psychologist's opinion. This case is about the degree to which those limitations limited Mr. Egley's ability to work. Focusing on Mr. Egley's mental impairments, it's important to remember that Dr. Schomburg's opinion was in June 2012, nearly three months after this major heart surgery. Following that, the opinions from Drs. Unversaw and Drs. Haskin, who are the state agency reviewing physicians, were in, I believe, July and October of 2012. Again, nearly months after his heart surgery and less than the 12-month duration required to show a severe impairment. Following those opinions, Mr. Egley received very little to no mental health treatment other than his family counseling in 2013, and the notes of which reflect Mr. Egley's good mood, saying he was doing well, not complaining about lack of concentration or inability to focus. The ALJ reasonably considered that in finding that his mental impairments may not have lasted, or excuse me, did not last the required 12-month duration to be severe. Mr. Egley has not pointed to evidence showing otherwise as was his burden. The ALJ also focused on the fact that Mr. Egley had not received treatment such as the cardiac rehabilitation and other treatment for his heart condition at the time of Dr. Schomburg's opinion, and Dr. Schomburg did say that treatment could improve Mr. Egley's outcome. Dr. Haskins and Dr. Unversall also noted that Dr. Schomburg's GAF rating was low and appeared to not match with, and his opinion of severe impairments did not appear to match with the examination data. Even if this court were to find that Mr. Egley, or I'm sorry, that the ALJ erred by not finding Mr. Egley had severe mental impairments, the ALJ went further in asking the vocational expert hypothetical questions of extensive mental impairments to which the vocational expert testified jobs would still be available for Mr. Egley to perform. Your Honor, in addressing any physical impairments Mr. Egley had, the ALJ recognized the severity of those. He did not ignore or play down the fact that Mr. Egley had major heart surgery. However, the ALJ recognized that merely months after the surgery, Mr. Egley's echocardiogram was normal. He was consistently seeing his cardiologist, Dr. Kahn, and later Dr. Odden, who remarked that his condition was stable and that his decision to, or his not working was made by choice. And importantly, there were no opinions whatsoever in the record more restrictive than the RFC regarding Mr. Egley's physical impairments. Mr. Egley's counsel refers to Mr. Egley's low average intellectual functioning. The commissioner would argue that there is not sufficient evidence to make that impairment severe. And with the ALJ's consideration of Mr. Egley's impairments in combination, the ALJ gave a thorough discussion of Mr. Egley's mental impairments, his strokes, and his seizures, and even included restrictions in the RFC to account for Mr. Egley's reported strokes and seizures, despite finding that there was no medical diagnosis of such. If your honors have no further questions, the acting commissioner would like to rest on her brief and ask that this court affirm the ALJ's decision. Thank you, counsel. You've got about two minutes. Your honors, first, I wanted to emphasize one piece here as to this claimant's ability to fend for himself, if you will. And this becomes most apparent on the record. This is argued in the briefs, but it becomes most apparent on the record, actually, in the Dr. Williams record. And it's where Dr. Williams makes the statement that basically this guy needs to work on speaking for himself and articulating his feelings and his problems. And he actually goes to a number of these appointments with either his mother or his father, who pushes him to bring out and talk about the things on hand. Of course, as discussed before, Dr. Williams' record is limited by its nature, which is focused on the relationship and unifying what in some ways is itself a problematic relationship. But second, this gentleman, for the reasons stated before, has treatment barriers in terms that prevent him from probably getting the care he needs. And then I wanted to more generally discuss this allegation by the commissioner in the briefs, as well as an oral argument that the RFC already accounts for these psychological impairments. Low-stress work, occasional decision-making, occasional changes in a work setting, to a degree that doesn't match up to most work pressures in all work setting being a problem for him, which is what Dr. Schomburg has said. Likewise, as to predictable but occasional changes in the work environment requiring little or no adaptation. Again, this is a persistence and pace case. And those things, the fact that it's a simple job with simple activities, that may affect how fast you can learn the job. But it doesn't make someone like Eggly thereby able to sustain and persist and stay on task. Thank you, Your Honors, unless you have any questions. We ask that you remain silent. Thanks to both counsel, and the case is taken under advisement.